IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PARTNERS HEALTHCARE SOLUTIONS HOLDINGS, L.P., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) C.A. No. 13-1767-RGA |
| UNIVERSAL AMERICAN CORP., | )<br>)<br>) |
| Defendant. | )<br>) |

**PLAINTIFF'S BRIEF IN SUPPORT OF**
**MOTION TO REMAND ACTION TO STATE COURT**

OF COUNSEL:

Reed S. Oslan, P.C.
Scott A. McMillin, P.C.
Richard U. S. Howell
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
(312) 862-2000

Jon E. Abramczyk (#2432)
Ryan D. Stottmann (#5237)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street, Suite 1600
Wilmington, DE  19801
(302) 658-9200
*Attorneys for Plaintiff Partners Healthcare Solutions Holdings, L.P.*

November 27, 2013

i

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND ..................................................................................................3

ARGUMENT ...........................................................................................................................5

    I.     APSLP'S DECLARATORY JUDGMENT ACTION DOES NOT
          RAISE A FEDERAL QUESTION. .........................................................................5

    II.    REMOVAL IS NOT JUSTIFIED UNDER THE "COERCIVE
          ACTION" DOCTRINE. ...........................................................................................8

CONCLUSION ......................................................................................................................14

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Batoff v. State Farm Ins. Co.*,
    977 F.2d 848 (3d Cir. 1992) ..................................................................................................5

*Borek v. Weinreb Mgmt.*,
    933 F. Supp. 357 (S.D.N.Y. 1996) ........................................................................................9

*Boyer v. Snap-on Tools Corp.*,
    913 F.2d 108 (3d Cir. 1990) ..................................................................................................5

*Brocato v. Angelo Brocato Ice Cream & Confectionery, Inc.*,
    2003 WL 22038402 (E.D. La. Aug. 22, 2003) ...................................................................12

*Care Corp. v. Kiddie Care Corp.*,
    344 F. Supp. 12 (D. Del. 1972) ...........................................................................9, 10, 12, 13

*Carson Real Estate Cos., LLC v. Constar Group, Inc.*,
    2011 WL 4360017 (E.D. Mich. Sept. 19, 2011) .................................................................12

*City of Pittsburgh v. UPMC*,
    2013 WL 4010990 (W.D. Pa. Aug. 6, 2013) .................................................................10, 11

*Cooper Indus., LLC v. ABB Holdings, Inc.*,
    2010 WL 173547 (S.D. Tex. Jan. 14, 2010) .........................................................................9

*Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*,
    463 U.S. 1 (1983) ....................................................................................................8, 11, 12

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
    545 U.S. 308 (2005) ............................................................................................................11

*Hunter Douglas Inc. v. Sheet Metal Workers Int'l Ass'n*,
    714 F.2d 342 (4th Cir. 1983) ..............................................................................................11

*Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.*,
    925 F.2d 556 (2d Cir. 1991) .........................................................................................12, 13

*Marine Bank v. Weaver*,
    455 U.S. 551 (1982) ...........................................................................................................12

*Mayer v. Oil Field Sys.*,
    803 F.2d 749 (2d Cir. 1986) ...............................................................................................13

*NACCO Indus. Inc. v. Applica Inc.*,
   997 A.2d 1 (Del. Ch. 2009) .................................................................................................. 11

*Samuel-Bassett v. KIA Motors Am., Inc.*,
   357 F.3d 392 (3d Cir. 2004) ................................................................................................... 5

*SEC v. Zandford*,
   535 U.S. 813 (2002) ............................................................................................................. 12

*Stuart Weitzman, LLC v. Microcomputer Res., Inc.*,
   542 F.3d 859 (11th Cir. 2008) ............................................................................................. 12

*Texas First Nat. Bank v. Wu*,
   347 F. Supp. 2d 389 (S.D. Tex. 2004) ................................................................................. 12

*Universal American Corp. v. Partners Healthcare Solutions Holdings, L.P.*,
   No. 1:13-cv-01767-RGA (D. Del. Oct. 22, 2013) ................................................................. 4

**RULES AND STATUTES**

8 U.S.C. § 1441(b) ........................................................................................................................ 5

28 U.S.C. § 1147(c) ................................................................................................................. 1, 4

28 U.S.C. §§ 1331, 1441(a), and 1446(a) ..................................................................................... 4

Securities and Exchange Act of 1934 ................................................................................. Passim

Plaintiff Partners Healthcare Solutions Holdings, L.P. ("APSLP") hereby moves this court, pursuant to 28 U.S.C. § 1147(c), to remand this action to its original place of filing in the Court of Chancery of the State of Delaware.

INTRODUCTION

This dispute arises from UAM's dissatisfaction with its purchase of Partners Healthcare Solutions, Inc. ("APS" or the "Company") in the spring of 2012. Realizing that they did not fully understand the nature of APS' business, the changes taking place in the Medicaid marketplace or how competitors would react to its purchase of APS, UAM is now attempting to get a "do over." Rather than facing the fact that they purchased a declining business and were unable to turn it around, UAM now seeks to blame the sellers of APS for breaching the Merger Agreement. The sales process itself, however, could not have been more transparent. APS provided a robust data room and added virtually any document requested by UAM. APS made its entire management team available to UAM and its sophisticated advisors, such as legal counsel Paul Weiss, on an unrestricted basis. And APS made its key customers, most especially Puerto Rico, available to UAM for direct discussions about the quality of APS's services and their satisfaction with those services.

Despite having all of this information available to them at the time they negotiated and signed the Merger Agreement, UAM has threatened numerous breaches of the Merger Agreement in an attempt to rewrite it or to have a court ignore express contractual provisions designed to preclude precisely the sort of re-trading UAM hopes to achieve.

As a result, APSLP was forced to file an action in the Delaware Court of Chancery on October 21, 2013 seeking a declaration that it has not breached its contractual obligations to Universal American Corp. ("UAM") under the parties' March 2, 2012 Agreement and Plan of Merger ("Merger Agreement"). APSLP filed this lawsuit in the Court of Chancery

1

pursuant to the Merger Agreement, which specified that disputes arising under the Merger Agreement must be filed in the state or federal courts of Delaware. The reason APS filed its complaint in Delaware Chancery Court is because that Court has a unique and substantial interest in the contractual language UAM is attempting to eviscerate. APSLP filed this lawsuit to enforce the Merger Agreement's express disclaimer of any representations and warranties outside of the agreement and the corresponding "anti-reliance" provision, both of which are set forth in Article 3. These provisions are incorporated into numerous merger and sale documents that are governed by Delaware law, and the Delaware Chancery Court has both unique expertise in interpreting such provisions, but also a substantial interest in ensuring the correct and uniform interpretation and enforcement of such provisions.

While UAM had also threatened APSLP with alleged federal claims of pre-closing misrepresentations under the Securities and Exchange Act of 1934 ("Exchange Act"), APSLP did not include any such federal claims in its Chancery action. In response, UAM filed its own suit in this Court the very next day, alleging claims against APSLP under the Merger Agreement, Delaware common law and the Exchange Act. On October 28, 2013, UAM filed a Notice of Removal transferring the Delaware Chancery action to this Court, asserting federal question jurisdiction.

APSLP hereby moves this Court to remand this case to the Delaware Chancery Court for two reasons. First, contrary to UAM's characterizations, APSLP's Delaware Chancery complaint is strictly limited to state law breach of contract issues and does not plead any causes of action arising under federal securities law. Second, UAM is wrong in asserting that the mere fact that it threatened APSLP with federal securities law claims prior to the filing of the Delaware Chancery action is sufficient to justify removal of this action under the so-called

2

"coercive action" doctrine. For these reasons, as more fully explained below, APSLP's motion to remand should be granted, and this action should be remanded to the Delaware Court of Chancery.

## FACTUAL BACKGROUND

UAM purchased APS from APSLP on March 2, 2012 pursuant to an Agreement and Plan of Merger ("Merger Agreement") executed on January 11, 2012. Article 3 of the Merger Agreement contains an anti-reliance provision, whereby the parties agreed to rely only on those representations and warranties expressly set forth in the Merger Agreement.

One year later, in March of 2013, UAM expressed dissatisfaction with APS's first-year performance and threatened APSLP with a grab bag of claims alleging that APSLP had breached certain representations and warranties that it made in the Merger Agreement, as well as several alleged representations and omissions not included in that agreement.

After months of good-faith negotiation, and after UAM rejected APSLP's offer to agree to a mutual litigation "standstill" agreement, APSLP exercised its right to seek declaratory relief in the Delaware Court of Chancery on October 21, 2013.[1] That action sought declarations that APSLP had not violated its representations and warranties in the Merger Agreement.

The following day, on October 22, 2013, UAM filed a parallel suit in this Court, presenting its own version of the contract dispute, and adding various parties, as well as several

---

[1] In its Notice of Removal, UAM makes baseless allegations that APSLP engaged in trickery by convincing UAM to delay filing its federal lawsuit so that APSLP could file first in state court, thus "secretly . . . circumvent[ing] this Court's jurisdiction." (Notice of Removal ¶ 11–16.) These allegations are ironic, because it was UAM, not APSLP, that refused to enter into a standstill agreement. In any event, the allegations have no bearing on this motion because a remand does not hinge on which action was filed first, nor would a remand affect UAM's ability to prosecute its federal lawsuit. Whether one of the two lawsuits should be stayed pending the resolution of the other is not at issue in this remand motion.

3

common law fraud claims and federal securities fraud claims. *Universal American Corp. v. Partners Healthcare Solutions Holdings, L.P.*, No. 1:13-cv-01767-RGA (D. Del. Oct. 22, 2013). Six days later, on October 28, 2013, UAM removed APSLP's first-filed state court action to this Court, pursuant to 28 U.S.C. §§ 1331, 1441(a), and 1446(a).

APSLP now moves this Court, pursuant to 28 U.S.C. § 1147(c) to remand this case to the Court of Chancery. UAM's Notice of Removal was filed on October 28, 2013. This motion is properly before this Court, as "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." 28 U.S.C. § 1147(c).

ARGUMENT

I.   APSLP'S DECLARATORY JUDGMENT ACTION DOES NOT RAISE A FEDERAL QUESTION.

In cases such as this between non-diverse parties, the removing party must show that "the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States." 8 U.S.C. § 1441(b). Removal statutes "are to be strictly construed against removal." *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (citation omitted). All doubts surrounding the propriety of a removal action "must be resolved in favor of remand." *See, e.g.*, *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 403 (3d Cir. 2004); *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992) ("[R]emoval statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" (citation omitted)).

UAM first asserts that APSLP's Chancery Court lawsuit contains "broad allegations [that] necessarily ask the Delaware Court of Chancery to resolve Universal's securities fraud claims even though that Court has no jurisdiction to do so." (Notice of Removal ¶ 10.) To support that assertion, UAM relies on a single sentence alleged in each of APSLP's 18 declaratory judgment counts, stating that "APSLP does not have liability to UAM under any legal theory." (*Id.*, *citing* APSLP's Verified Compl. ¶ 439.)

But UAM's argument takes this "any legal theory" language out of context. Under any reasonable reading, each of APSLP's 18 counts is focused on and limited to UAM's threatened claims that APSLP breached the Merger Agreement. None of the counts refer to or encompass any federal securities law claims. Indeed, APSLP's declaratory judgment action makes no reference to the Exchange Act, and does not mention the words "securities" or "fraud" a single time. Instead, each of the 18 counts is structured identically, to frame the subject matter

5

of the parties' dispute and of the requested relief strictly within the confines of the Merger Agreement.

First, the titles of each of the 18 counts clearly refer to, and are limited to, alleged breaches of the Merger Agreement. For example, Count I is titled "Declaration that APSLP did not breach its covenants, representations, or warranties regarding the Puerto Rico contract." Count II contains the identical title, but substitutes "the Pennsylvania contract" as its subject matter. The titles of the remaining 16 counts follow the same template, alleging that APSLP did "not breach any covenants, representations, or warranties regarding" 16 other identified subject matters.

Second, each of the 18 counts then defines the "dispute" between UAM and APSLP solely in terms of an alleged breach of the Merger Agreement. For example, Count XIII alleges that "UAM has alleged the following <u>breaches</u> of the Company's Oregon contract." (Verified Compl. ¶ 402 (emphasis added).) Count XIII then alleges why "APSLP disputes <u>these allegations</u> in full." (*Id*. ¶ 405 (emphasis added).)

Third, each of the 18 counts then denies that UAM has made a valid claim <u>under the Merger Agreement</u>. (*Id*. ¶¶ 406-07.) No allegations are made as to whether UAM has any claims under the Exchange Act or any other federal claim.

Fourth, each of the 18 counts then alleges that the interests of the parties are "adverse" on the subject matter of the count, which for Count XIII is "whether APSLP breached its covenants, representations, or warranties <u>in the Merger Agreement</u> regarding the Oregon contract." None of the 18 counts plead that the parties are adverse with respect to any subject matter under the Exchange Act or any other federal question. (*Id*. ¶ 408 (emphasis added).)

6

Fifth, each of the 18 counts then re-alleges the declaration that APSLP seeks, for example under Count XIII, that "APSLP did not breach its covenants, representations, or warranties <u>in the Merger Agreement</u> regarding the Oregon contract." (*Id.* ¶ 409 (emphasis added).)

Sixth, only then does APSLP allege that "APSLP does not have any liability to UAM under any legal theory with respect to the changes in the Oregon contract." (*E.g., id.* ¶ 410 (Count XIII).) UAM's argument that the phrase "any legal theory" sweeps in federal claims is wrong. The allegations referred to in that sentence are the specifically alleged "breaches" of the Merger Agreement that were already alleged in the preceding paragraphs of this same count, not some amorphous federal securities law claims. (*Id.* ¶¶ 402-04.) The "any legal theory" language in each of the other 17 counts is similarly tied to the specific alleged breaches of the Merger Agreement that are pled in each of those counts. For example, in Count XV, which is the count cited in UAM's Notice of Removal (Notice of Removal ¶ 10), the "any legal theory" sentence reads as follows: "APSLP does not have any liability to UAM under any legal theory <u>with respect to its financial projections or new business pipelines</u>." (Verified Compl. ¶ 439 (emphasis added).) And that sentence refers in turn to the specific alleged "breaches" of the Merger Agreement alleged in paragraphs 426–28 of the same Count, <u>not</u> to any amorphous federal securities claims: "UAM has alleged the following breaches relating to the Company's financial projections and new business pipelines: . . . ." (*Id.* ¶¶ 426–28.)

Seventh, each of the 18 counts next alleges that "[t]here exists an actual, valid, ripe, and justiciable controversy <u>regarding whether APSLP has breached the terms of the Merger Agreement</u>." (*E.g., id.* ¶ 231 (Count I) (emphasis added).) This re-confirms that the scope of the action is focused on and limited to the alleged breaches of that agreement.

7

Eighth, each of the 18 counts closes by alleging that "[a] declaratory judgment will clarify and settle the legal relations between the parties <u>with respect to the contract provision</u>, and will afford relief from the uncertainty, insecurity, and controversy giving rise to the present action." (*E.g.*, *id.* ¶¶ 232 (Count I) (emphasis added).)

In sum, nothing in the Verified Complaint supports UAM's assertion that APSLP has pled "broad allegations [that] necessarily ask the Delaware Court of Chancery to resolve Universal's securities fraud claims even though that Court has no jurisdiction to do so." (Notice of Removal ¶ 10.)  To the contrary, APSLP's Verified Complaint is strictly confined to the question whether APSLP discharged its obligations to UAM under the Merger Agreement.  For these reasons, the Verified Complaint does not raise a federal question and therefore is not removable.

## II. REMOVAL IS NOT JUSTIFIED UNDER THE "COERCIVE ACTION" DOCTRINE.

UAM's second justification for removal is based on the so-called "coercive action" doctrine, an exception to the well-pleaded complaint rule.  The Supreme Court first recognized this doctrine in the context of a removal action in the *Franchise Tax Board* case (before ultimately ruling that removal was improper in that case).  In *Franchise Tax Board*, the Supreme Court noted that "federal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 19 (1983).  UAM argues that removal here is justified because it threatened APSLP with federal securities law claims before APSLP filed its Delaware Chancery Court action, and because its subsequent

8

federal lawsuit "alleges federal securities fraud claims on the same facts alleged in the [Chancery Court action]." (Notice of Removal ¶¶ 6–9, 18.)

UAM's assumption that a party can guarantee federal jurisdiction over all claims in a pre-litigation dispute merely by threatening its adversary with a federal claim is wrong. Even where the parties may have a separate dispute under federal law, a declaratory judgment plaintiff remains "master of its complaint" and may seek a declaration on the state law issues based on state law only. *See, e.g., Cooper Indus., LLC v. ABB Holdings, Inc.*, 2010 WL 173547, *3-*4 (S.D. Tex. Jan. 14, 2010) (declaratory judgment plaintiff was "master of his complaint" and the case had to be remanded to state court where plaintiff had not attempted to "artfully plead[] a contract claim around a necessarily federal . . . dispute"); *Borek v. Weinreb Mgmt.*, 933 F. Supp. 357, 362 (S.D.N.Y. 1996) ("As the 'master of the complaint,' the [declaratory judgment] plaintiff has the right to choose to bring state-law claims rather than claims based on federal law."). Where, as here, the state declaratory judgment action does not plead any federal claims, and the action "is simply not a matter of federal concern, it will be remanded to the state court." *Care Corp. v. Kiddie Care Corp.*, 344 F. Supp. 12, 17 (D. Del. 1972) (emphasis added).

In the *Care Corp.* case, Care Corp. incorporated a company named Kiddie Care. Care Corp. then conveyed property to Kiddie Care in return for 310,000 shares of Kiddie Care's stock. Kiddie Care later arranged for a public offering of additional stock. Subsequently, Kiddie Care notified Care Corp. that it believed that the transfer of its stock to Care Corp. should be rescinded under Delaware corporation law and that the transaction also violated federal securities law. Care Corp. responded by filing an action in the Delaware Court of Chancery seeking a declaration that the 310,000 shares it had received were "validly and properly issued." Kiddie Care filed its own federal lawsuit in the Western District of Michigan seeking rescission of the

stock transfer under federal securities law. Kiddie Care then removed the Delaware Chancery action to Delaware federal court on the basis that its threatened action had involved a claim under federal securities law. The Delaware federal court framed the question presented by Kiddie Care's removal notice as follows:

> [T]he question in this case is whether a declaratory plaintiff faced with two threatened claims, one a state claim and the other a federal claim over which the federal courts have exclusive jurisdiction, may choose to seek declaratory relief in a state court solely on the state claim and successfully resist removal of his case to the federal courts. I conclude that this question should be answered in the affirmative.

344 F. Supp. at 16. In so ruling, the court emphasized that remanding the case to the Delaware Chancery Court would in no way deprive Kiddie Care of "a federal determination of its federal claim. The Court of Chancery cannot determine Kiddie Care's claim under the Securities Exchange Act. The Delaware courts have consistently refused to entertain such claims." 344 F. Supp. at 17.

The limits of the coercive action doctrine were also recently confirmed by the court in *City of Pittsburgh v. UPMC*, No. 13-565, 2013 WL 4010990 (W.D. Pa. Aug. 6, 2013). In that case, the City of Pittsburgh filed a lawsuit in state court seeking a declaration that the defendant did not qualify under Pennsylvania law for a charitable institution exemption from the City's payroll tax. UPMC removed the case to federal court, citing its own federal lawsuit against the City seeking to establish its entitlement to charitable status under the Internal Revenue Code, and further arguing that the Pennsylvania statutory requirements for charitable status hinged on the entity's tax-exempt status under the federal Internal Revenue Code. *Id*. at *3. UPMC opposed remand on the basis of the coercive action doctrine: "The essence of UPMC's opposition to the present [remand] motion is that the coercive action doctrine establishes federal subject-matter jurisdiction because UPMC could — and in fact did — file a

10

coercive action based upon the allegation in the City's complaint." *Id*. at *4. The court decided to remand the City's case back to state court, ruling that "the coercive action doctrine requires some degree of congruence between the declaratory judgment actions and the hypothetical (or real) coercive actions in those cases — they both relied upon an underlying federal law." *Id*. at *4. UPMC failed this test for removal because the "city's choice of forum in the present case underscores just the opposite — that the issues in its suit arise under state law." *Id*. at *4 n.2.

Courts have recognized that some types of threatened disputes are "inevitably federal in nature" even if the basis for federal jurisdiction is not expressly stated in the declaratory judgment plaintiff's complaint. *Hunter Douglas Inc. v. Sheet Metal Workers Int'l Ass'n*, 714 F.2d 342, 345 (4th Cir. 1983). In the *Hunter Douglas* case, for example, the Fourth Circuit ruled that "a claim founded upon a labor contract violation is preemptively federal" because of the "distinctly federal nature of labor contract disputes." *Id*. at 346 n.2. The Supreme Court in the *Franchise Tax Board* case noted that patent infringement cases are another example of disputes that "would necessarily present a federal question." 463 U.S. at 19 n.19.

But the breach of contract claims put at issue by APSLP's Delaware Chancery action are <u>not</u> "necessarily" or "inevitably" federal in nature. "[T]he extent to which a state law claim necessarily raises a federal issue is inherently a question of degree, requiring a pragmatic judgment based on the particulars of the individual case." *NACCO Indus. Inc. v. Applica Inc.*, 997 A.2d 1, 24 (Del. Ch. 2009) (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005)). Indeed, "where a plaintiff has sought to assert a common law fraud or misrepresentation claim, the fact that the claim might have given rise to a similar claim under the federal securities laws generally has <u>not</u> supported removal jurisdiction." *Id*. at 23 (emphasis added). Here, APSLP did not even venture into the realm of common law fraud in pleading its

declaratory judgment action, thereby setting its purely-contractual claims well apart from any allegations that might hint at a federal securities claim.

UAM's only alleged basis for invoking the Exchange Act in its parallel federal lawsuit is that UAM paid part of the consideration for the merger in UAM stock. But the Supreme Court has cautioned that § 10(b) of the Exchange Act "must not be construed so broadly as to convert every common-law fraud that happens to involve securities into a violation of [the statute]." *SEC v. Zandford*, 535 U.S. 813, 819 (2002); *see also Marine Bank v. Weaver*, 455 U.S. 551, 556 (1982) ("Congress, in enacting the securities laws, did not intend to provide a broad federal remedy for all fraud."). Adding a tangential securities claim to what is otherwise a state-law-governed contract dispute does not hide the fact that APSLP's Delaware Chancery action is, both as pleaded and with respect to its "necessary" or "inevitable" subject matter, a matter of state law. As this court ruled in the *Care Corp. v. Kiddie Care case* discussed above, such state law disputes are "simply not a matter of federal concern." 344 F. Supp. at 17.

None of the cases cited by UAM holds otherwise. (*See* Notice of Removal ¶¶ 17-18.) The majority of the cases that UAM cites are factually dissimilar to the present matter.[2] And the single case cited by UAM that did involve Exchange Act claims supports remanding this case back to the Court of Chancery. Namely, in *Kidder, Peabody & Co., Inc. v. Maxus Energy*

---

[2] Unlike *Kiddie Corp.*, the majority of UAM's cited cases do not involve claims under the Exchange Act. *See Carson Real Estate Cos., LLC v. Constar Group, Inc.*, No. 10-13966, 2011 WL 4360017 (E.D. Mich. Sept. 19, 2011) (Copyright Act); *Texas First Nat. Bank v. Wu*, 347 F. Supp. 2d 389 (S.D. Tex. 2004) (Change in Bank Control Act); *Brocato v. Angelo Brocato Ice Cream & Confectionery, Inc.*, No. 03-1316, 2003 WL 22038402 (E.D. La. Aug. 22, 2003) (federal trademark law); *Stuart Weitzman, LLC v. Microcomputer Res., Inc.*, 542 F.3d 859 (11th Cir. 2008) (Copyright Act); *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1 (1983) (ERISA).

*Corp.*, 925 F.2d 556, 562 (2d Cir. 1991), the plaintiff sought a declaration in the federal court that it did not violate various state laws or the Exchange Act. The court granted the plaintiff's requested relief, *but only as it related to the defendant's claims under the Exchange Act*. *Id*. at 563. Instead, the court declined to exercise jurisdiction over the pendent state claims because there were similar claims already before the Texas state court, arguing that "strong interests of federalism and comity in this case pointed toward divestiture of pendent jurisdiction." *Id*. at 564 ("A district court should refrain from 'reach[ing] out for . . . issues, thereby depriving state courts of opportunities to develop and apply state law." (quoting *Mayer v. Oil Field Sys.*, 803 F.2d 749, 757 (2d Cir. 1986)).

Ultimately, none of the cases cited by UAM rebuts this Court's holding in *Care Corp. v. Kiddie Corp.* that even amidst threats of both state and federal claims, a plaintiff "may choose to seek declaratory relief in a state court solely on the state claim and successfully resist removal of his case to the federal courts." 344 F. Supp. at 16. Because APSLP is entitled to bring a declaratory judgment action in the state court seeking only the adjudication of state law issues, this court lacks subject matter jurisdiction over this action, making removal improper.

## CONCLUSION

For the reasons stated above, APSLP respectfully requests that the Court remand this matter to the Court of Chancery of the State of Delaware.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jon E. Abramczyk*
Jon E. Abramczyk (#2432)
Ryan D. Stottmann (#5237)
1201 North Market Street, Suite 1600
Wilmington, DE  19801
(302) 658-9200
  *Attorneys for Plaintiff Partners Healthcare Solutions Holdings, L.P.*

OF COUNSEL:

Reed S. Oslan, P.C.
Scott A. McMillin, P.C.
Richard U. S. Howell
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
(312) 862-2000

November 27, 2013

7810770

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 27, 2013, the foregoing PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO REMAND ACTION TO STATE COURT was caused to be served upon the following counsel of record via CM/ECF:

    Blake Rohrbacher (#4750)
    RICHARDS, LAYTON & FINGER, P.A.
    920 North King Street
    Wilmington, DE 19801
    (302) 651-7700

*/s/ Ryan D. Stottmann*
Ryan D. Stottmann (#5237)