## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PARTNERS HEALTHCARE SOLUTIONS ) 
HOLDINGS, L.P., )
  )
    Plaintiff, )
  )   C.A. No. 13-1767-RGA
   v. )
  )   REDACTED PUBLIC VERSION
UNIVERSAL AMERICAN  CORP., )
  )
    Defendant. )
  )

### DEFENDANT UNIVERSAL AMERICAN CORP.'S
### ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION
### TO REMAND ACTION TO STATE COURT

*Of Counsel:*

Andrew J. Levander
Linda C. Goldstein
Paul C. Kingsbery
Dechert LLP
1095 Avenue of the Americas
New York, New York 10036
212-698-3500
andrew.levander@dechert.com
linda.goldstein@dechert.com
paul.kingsbery@dechert.com

Stuart T. Steinberg
Elisa T. Wiygul
Dechert LLP
2929 Arch Street
Philadelphia, Pennsylvania 19104
215-994-4000
stuart.steinberg@dechert.com
elisa.wiygul@dechert.com

Dated: December 16, 2013
Public Version Filed: December 23, 2013

Blake Rohrbacher (#4750)
Kelly E. Farnan (#4395)
Katharine C. Lester (#5629)
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, Delaware 19801
302-651-7700
rohrbacher@rlf.com
farnan@rlf.com
lester@rlf.com

*Attorneys for Defendant Universal American Corp.*

## Table Of Contents

Page

Table of Authorities ................................................................................................... ii

Statement of Nature and Stage of Proceedings ........................................................... 1

Summary of Argument ................................................................................................. 3

Statement of Facts ........................................................................................................ 3

    A.    APSLP And The Other GTCR Defendants Fraudulently Induce Universal
        To Acquire APS ................................................................................................ 3

    B.    APSLP Deceptively Races To The Courthouse In An Attempt To Preempt
        Universal's Securities Fraud Action ................................................................. 5

    C.    The Declaratory Action Is Duplicative Of The Securities Fraud Action
        And Seeks Declarations Of Universal's Federal Rights ................................... 7

Argument ...................................................................................................................... 8

I.    Removal Was Proper Under The Coercive Action Doctrine Because
    Universal Could And Did Bring A Federal Claim .............................................. 8

II.    APSLP's Complaint Encompasses Universal's Federal Securities Fraud Claim ........... 11

    A.    On Its Face, APSLP's Complaint Seeks Declaratory Relief With Respect
        To Universal's Federal Rights ....................................................................... 11

    B.    APSLP's Reliance And Exclusive Remedies Defenses Are
        Obvious Attempts To Preempt Universal's Federal Rights ............................. 14

    C.    APSLP's Complaint Necessarily Goes To The Heart Of
        Universal's Federal Securities Claim ............................................................. 16

Conclusion ................................................................................................................. 18

RLF1 9704529v.1

**Table of Authorities**

CASES                                                                          PAGE(S)

*Abry Partners V, L.P. v. F & W Acquisition LLC,*
    891 A.2d 1032 (Del. Ch. 2006)........................................................................15

*AES Corp. v. Dow Chem. Co.,*
    325 F.3d 174 (3d Cir. 2003)...........................................................................15

*Borek v. Weinreb Mgmt.,*
    933 F. Supp. 357 (S.D.N.Y. 1996)..................................................................17

*Brocato v. Angelo Brocato Ice Cream & Confectionery, Inc.,*
    No. 03-1316, 2003 WL 22038402 (E.D. La. Aug. 25, 2003)............................14

*Care Corp. v. Kiddie Care Corp.,*
    344 F. Supp. 12 (D. Del. 1972)......................................................................17

*Carson Real Estate Cos., LLC v. Constar Grp., Inc.,*
    No. 10-13966, 2011 WL 4360017 (E.D. Mich. Sept. 19, 2011).................12, 13

*City of Pittsburgh v. UPMC,*
    No. 13-565, 2013 WL 4010990 (W.D. Pa. Aug. 6, 2013).................................16

*Columbia Gas Transmission Corp. v. Drain,*
    237 F.3d 366 (4th Cir. 2001) ..........................................................................9

*Cooper Indus., LLC v. ABB Holdings, Inc.,*
    No. H-09-3534, 2010 WL 173547 (S.D. Tex. Jan. 14, 2010).........................18

*First Am. Title Ins. Corp. v. JP Morgan Chase & Co.,*
    384 F. App'x 64 (3d Cir. 2010) ......................................................................18

*Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.,*
    463 U.S. 1 (1983)...............................................................................3, 9, 13

*Gutridge v. Iffland,*
    No. 291,2005, 2005 WL 3454129 (Del. Dec. 15, 2005).................................15

*Honeywell Int'l Inc. v. Int'l Union, United Auto., Aerospace & Agric.*
    *Implement Workers of Am.,*
    502 F. App'x 201 (3d Cir. 2012) ...................................................................3, 9

*Household Bank v. JFS Group,*
    320 F.3d 1249 (11th Cir. 2003) ..................................................................9, 16

*Hunter Douglas Inc. v. Sheet Metal Workers Int'l Ass'n, Local 159*,
   714 F.2d 342 (4th Cir. 1983) ........................................................................18

*Interim Healthcare, Inc. v. Spherion Corp.*,
   884 A.2d 513 (Del. Super. Ct. 2005) ..............................................................15

*Kidder, Peabody & Co. v. Maxus Energy Corp.*,
   925 F.2d 556 (2d Cir. 1991)..............................................................................9

*Martin v. Franklin Capital Corp.*,
   546 U.S. 132 (2005)........................................................................................18

*McCabe v. Ernst & Young, LLP*,
   Civ. No. 01-5747, 2006 WL 42371 (D.N.J. Jan. 6, 2006) .....................................10

*NACCO Indus., Inc. v. Applica Inc.*,
   997 A.2d 1 (Del. Ch. 2009)........................................................................16, 18

*Pages, Inc. v. Gruner & Jahr Printing & Publ'g Co.*,
   Civ. No. 95-9703, 1996 WL 48586 (S.D.N.Y. Feb. 7, 1996) ................................10

*Popovice v. Milides*,
   11 F. Supp. 2d 638 (E.D. Pa. 1998) .................................................................10

*Standard Ins. Co. v. Saklad*,
   127 F.3d 1179 (9th Cir. 1997) ...........................................................................9

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
   552 U.S. 148 (2008)........................................................................................15

*Stuart Weitzman, LLC v. Microcomputer Res., Inc.*,
   542 F.3d 859 (11th Cir. 2008) .......................................................................3, 9

*Tracinda Corp. v. DaimlerChrysler AG*,
   197 F. Supp. 2d 42 (D. Del. 2002) ...................................................................10

## STATUTES

15 U.S.C. § 78aa .................................................................................................3

15 U.S.C. § 78cc(a)..............................................................................................15

RLF1 9704529v.1

Universal American Corp. ("Universal") files this brief in opposition to the motion by Partners Healthcare Solutions Holdings, L.P. ("APSLP") to remand this suit to state court.

## Statement of Nature and Stage of Proceedings

This case arises out of APSLP's fraudulent misrepresentations and omissions in connection with the sale of Partners Healthcare Solutions, Inc. ("APS") to Universal on March 2, 2012, for consideration that included more than $70 million of Universal's NYSE-traded stock. APSLP, along with its private equity fund owner GTCR Golder Rauner II, L.L.C. ("GTCR") and APS's former senior executives (together with APSLP, the "GTCR Defendants"), misled Universal about APS's massive failings in contract performance and compliance, misrepresented the status of APS's largest and most important customer contracts and made up phony new business projections for Universal's consumption that bore little resemblance to APS's own internal projections. Universal did not discover until after the transaction closed that key representations in the Merger Agreement were false and that APS's 2012 budget and new business projections were a fantasy. Although Universal was told as late as February 29, 2012— just two days before the closing—that APS was on track to earn $44.8 million of EBITDA in 2012, by just six weeks later, that figure had plummeted 40% and by year-end, APS's 2012 EBITDA was only $8 million.

APSLP began this declaratory judgment action (the "Declaratory Action") in the Delaware Court of Chancery shortly before midnight on October 21, 2013, twelve hours before Universal filed its federal securities fraud lawsuit, *Universal American Corp. v. Partners Healthcare Solutions Holdings, L.P.*, C.A. No. 13-1741-RGA (the "Securities Fraud Action"), in this Court. The Declaratory Action was intended to preempt the Securities Fraud Action; the parties had been engaged in settlement discussions for months, and the GTCR Defendants asked

- 1 -

Universal to hold off on filing its threatened federal securities fraud suit on the pretext that they needed more time to prepare a counter-offer to Universal's latest settlement demand. On October 28, 2013, Universal properly removed the Declaratory Action to this Court based on federal question jurisdiction. (D.I. 1.) On November 27, 2013, Universal moved to dismiss the Declaratory Action on the ground that it is entirely superfluous, since APSLP's liability to Universal will be fully adjudicated in the context of Universal's damage claims asserted in the Securities Fraud Action pending in this Court. (D.I. 11-14.)

APSLP now challenges Universal's removal of the Declaratory Action, arguing that its complaint does not raise a federal question. Under the so-called "coercive action" doctrine, however, the relevant inquiry for jurisdictional purposes is whether APSLP has alleged facts in the Declaratory Action demonstrating that Universal, the true or "coercive" plaintiff, *could* bring federal claims against APSLP. Here, not only *could* Universal raise federal claims, but, as APSLP's complaint makes clear, Universal repeatedly told APSLP that it *would* do so, and then actually *did* file the Securities Fraud Action in this Court based on the *same* false representations that APSLP has put at issue in the Declaratory Action. Moreover, while APSLP now says that it seeks declarations only as to state law breach of contract issues, APSLP specifically alleged—18 times—that it "does not have liability to [Universal] *under any legal theory*" (emphasis added). Although APSLP seeks to recant those words here, their meaning is plain: APSLP wanted the state court to determine non-contractual claims, such as the federal securities claims asserted in the Securities Fraud Action. That language, as well as APSLP's request for declarations on the enforceability of an anti-reliance provision—a clause that has no bearing upon contract claims, but is designed to preclude fraud claims—make it crystal clear that the Declaratory Action encompasses Universal's fraud claims, including its federal securities fraud claims.

2

## Summary of Argument

1.     Under the coercive action doctrine, a declaratory judgment complaint raises a federal question if the declaratory defendant could have brought a coercive action against the declaratory plaintiff under federal law. *See Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 19 (1983); *Honeywell Int'l Inc. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 502 F. App'x 201, 204 n.4 (3d Cir. 2012); *Stuart Weitzman, LLC v. Microcomputer Res., Inc.*, 542 F.3d 859, 862 (11th Cir. 2008).

2.     Here, Universal could and, in fact, did bring a federal securities fraud claim against APSLP.  Universal had repeatedly threatened to bring such a claim before APSLP filed the Declaratory Action seeking a declaration of non-liability "under any legal theory," an expansive and unqualified request for relief that plainly covers Universal's federal securities fraud claims.  Moreover, because the Declaratory Action seeks declarations regarding the very representations made by APSLP that are the subject of the Securities Fraud Action, the Declaratory Action necessarily reaches Universal's federal securities fraud claim, over which this Court has exclusive jurisdiction. *See* 15 U.S.C. § 78aa.  Removal was therefore proper.

### Statement of Facts

### A.     APSLP And The Other GTCR Defendants Fraudulently Induce Universal To Acquire APS

Universal is a publicly traded company that offers healthcare products and programs primarily to people enrolled in the federal Medicare program.  (Securities Fraud Complaint ("Sec. Fraud Compl.") (C.A. No. 13-1741-RGA, D.I. 1) ¶¶ 6, 22.)  APSLP is a holding company controlled by private equity firm GTCR that formerly owned APS, a specialty healthcare company providing care management, behavioral health, and disease management services to state Medicaid agencies and private health plans. (*Id.* ¶¶ 1, 11.)  On March 2, 2012, Universal

3

acquired APS from APSLP pursuant to an Agreement and Plan of Merger that had been executed on January 11, 2012. (*Id.* ¶¶ 57, 66.) Universal paid over $220 million in its own NYSE-traded stock and cash to buy APS. (*Id.* ¶ 68.)

In acquiring APS, Universal relied upon a number of contractual representations and warranties that (i) APS was not in breach of any of its material contracts; (ii) no counterparty had indicated its intent to cancel a material contract; (iii) more specifically, APS was not in breach of its contract with ███████████████████, which was responsible for 40 percent of APS's revenues; (iv) APS was in compliance with applicable Healthcare Laws; (v) there had been no Material Adverse Effect since its last audited financial statement; and (vi) APS owned certain software that was key to its service offerings. (*Id.* ¶ 58 (citing Merger Agreement §§ 3.9, 3.16, 3.17, 3.25 and 3.29).) Universal also relied upon a 2012 budget projecting $44.8 million of EBITDA, including $19.3 million from new business. (Sec. Fraud Compl. ¶¶ 2-3, 51, 64(d), 92(c).)

All of these representations turned out to be false, and deliberately so. The GTCR Defendants knew but had fraudulently concealed that APS's largest customer, █████████, had told APS that it was in default of the parties' contract. (*Id.* ¶¶ 41-43, 58(a), (b).) APS was also in breach of numerous other material customer contracts. (*See, e.g., id.* ¶¶ 62(b), (c), 69(f), 90(g), 91(g), 69(f), 90(f), 91(f), 90(h), 91(l).) The pipeline of new business that APS was supposedly likely or "highly likely" to obtain in 2012 turned out to be a phony set of projections that had been concocted for Universal and bore no resemblance to the true internal estimates. (*Id.* ¶¶ 3, 73-84.) During the period between the signing and the closing of the transaction, APS lost millions of dollars of business, and a supposed long-term contract renewal with one major customer that had in fact been put out to bid (and ultimately awarded to another company). (*Id.*

4

¶¶ 62(e), 91(e).)  The purportedly "proprietary" software that APS owned was, in reality, largely licensed.  (*Id.* ¶¶ 85-88.)

Given these and other undisclosed problems at APS, the GTCR Defendants' repeated assurances—right up until *two days* before closing—that APS was on target to meet its $44.8 million EBITDA target were patently false and misleading.  (*Id.* ¶ 70.)  Within six weeks of closing, APS informed Universal that it had slashed the 2012 EBITDA target by 40%, to $27.1 million.  (*Id.*)  Within four months of closing, APS told Universal that it would generate an anemic $4.1 million of EBITDA in 2012.  (*Id.*)  After scrambling to cut expenses, APS was able to eke out a meager $8 million of EBITDA by year-end, a financially disastrous 82% shortfall. (*Id.*)

**B.      APSLP Deceptively Races To The Courthouse In An Attempt To Preempt Universal's Securities Fraud Action**

APSLP knew that Universal was going to bring federal securities fraud claims against it. Specifically, APSLP alleges that it received two letters from Universal on March 1, 2013.  (D.I. 1 at Ex. 1 ¶ 53.)  One was a notice of Universal's claim for indemnification.  *Id.*  That letter expressly reserved Universal's rights to bring "securities fraud" claims.  (*See* Ex. A to Levander Decl. in Support of Universal Motion to Dismiss (D.I. 14).)  APSLP further alleges that the second letter "outlined [Universal]'s 'significant claims' against APSLP and requested a confidential meeting to discuss its investigation and claims."  (D.I. 1 at Ex. 1 ¶ 53.)  In that letter, Universal asserted unequivocally that it "was defrauded" by APSLP and GTCR and that "federal securities law . . . will govern [its] claims."  (*See* Ex. 1 to the accompanying Declaration of Linda C. Goldstein.)  Thereafter, Universal confirmed its intent to bring federal securities fraud claims

at an April 3, 2013 meeting, in an August 22, 2013 letter, and throughout a mediation on

September 16-17, 2013. (*See* D.I. 1 at Ex. 1 ¶¶ 54-55, 57; Levander Decl. ¶¶ 3-5; Ex. B.[1])

 After the mediation, the parties continued to engage in settlement efforts. On October 8,

2013, Universal's counsel conveyed a settlement demand to APSLP's counsel. (Levander Decl.

¶ 7.) Having received no response, Universal told APSLP on October 17 that Universal would

file the Securities Fraud Action if it did not receive a response to its settlement demand on or

before Monday, October 21. (*Id.* ¶¶ 7-8.) On October 20 and October 21, a principal of APSLP

and its counsel separately sought more time purportedly so APSLP could prepare a counter-offer,

to which Universal agreed. (*Id.* ¶¶ 8-9; Ex. D.) At 10:33 p.m. on October 21, APSLP's counsel

sent Universal's counsel an email suggesting that the two talk at 10 a.m. the following day. (*Id.*

¶ 10; Ex. E.) Twenty-one minutes later, at 10:54 p.m., APSLP filed the Declaratory Action in

the Court of Chancery. (*Id.* ¶ 11; Ex. F.) Universal's counsel called APSLP's counsel at 10 a.m.

the next day, only to be told that the Declaratory Action had been filed the previous night. (*Id.*

¶ 12.) Universal filed the Securities Fraud Action within the hour. (*Id.* ¶ 13; Ex. G.) The first

count of that complaint is a claim against APSLP for securities fraud under Section 10(b) of the

Securities Exchange Act of 1934 (the "Exchange Act"). (*See* Sec. Fraud Compl. ¶¶ 123-30.)

Universal also alleges that APSLP is liable under the Merger Agreement for breach of its

obligation to indemnify Universal for breaches of the representations, warranties, and covenants

in the Agreement. (*See id.* ¶¶ 167-75.)

---

 [1]  Exhibits A through G are attached to the Declaration of Andrew J. Levander (D.I. 14).

## C.    The Declaratory Action Is Duplicative Of The Securities Fraud Action And Seeks Declarations Of Universal's Federal Rights

As set forth more fully in Universal's Motion to Dismiss, the Declaratory Action asserts eighteen counts of exclusively declaratory relief against Universal arising from the *very same misrepresentations* that are at issue in the Securities Fraud Action.  (*See* D.I. 12 at 6-12.)  All but one of the counts seek a declaration that APSLP did not breach the applicable contractual representations regarding a specific subject (in other words, that the contractual representations on those subjects are true) and that APSLP is not liable to Universal "under any legal theory." (*See* D.I. 1 at Ex. 1 ¶¶ 230, 247, 271, 291, 306, 317, 333, 349, 361, 374, 386, 398, 410, 422, 450, 467, 479.)

APSLP also seeks declaratory relief with respect to alleged "extra-contractual representations."  (*Id.* ¶ 430.)  For example, ASPLP alleges that it "made no representations or warranties regarding future projections in the Merger Agreement," that Universal's "allegations . . . do not constitute an actionable claim" and are allegedly barred by an "anti-reliance" provision in the Merger Agreement, and that APSLP is not liable "under any legal theory" regarding the projections.  (*Id.* ¶¶ 427-28, 430, 436, 439.)  APSLP further attempts to preempt Universal's federal securities fraud claim on this subject by alleging that Universal did not actually or reasonably rely on the projections.  (*Id.* ¶¶ 432-33.)

Universal removed the Declaratory Action to this Court on October 28, 2013.  (D.I. 1.) Seeking to have the Court of Chancery interpret the "anti-reliance" provision (D.I 10 at 2)—an issue squarely directed at Universal's federal securities fraud claim—APSLP has moved to remand the Declaratory Action to state court.  Because this Court has exclusive jurisdiction over Universal's federal securities fraud claims, it necessarily has jurisdiction over the Declaratory

7

Action, which seeks judicial declarations going to the core of these claims. This Court should

not countenance APSLP's attempt to spawn competing litigations addressing the same core facts

and claims and should deny APSLP's motion.

### Argument

This Court has federal question jurisdiction over APSLP's complaint under the well-

established "coercive action" doctrine. Under Third Circuit law, the relevant test is whether

APSLP has alleged facts in the Declaratory Action demonstrating that Universal *could* bring its

own federal law claim. Universal not only could bring a federal securities fraud claim, it

repeatedly told APSLP before APSLP filed the Declaratory Action that it was planning to bring

such a claim and then actually filed the Securities Fraud Action based on the very same

misrepresentations that APSLP has put at issue in the Declaratory Action.[2] Moreover, while

APSLP now attempts to backpedal from its own allegations, the Declaratory Action complaint

both facially and necessarily encompasses Universal's federal securities fraud claim.

### I. Removal Was Proper Under The Coercive Action Doctrine Because Universal Could And Did Bring A Federal Claim

Universal properly removed APSLP's Declaratory Action under the "coercive action"

doctrine. The Supreme Court recognized this doctrine in the removal context in *Franchise Tax*

*Board*, where it explained that "[f]ederal courts have regularly taken original jurisdiction over

declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive

---

[2]  APSLP's contention that courts must "strictly construe" the removal statutes has no bearing where, as here, the Court has both (i) federal question jurisdiction over Universal's Exchange Act claims and (ii) supplemental jurisdiction over Universal's breach of contract claims, which—if one accepts APSLP's attempt to rewrite its complaint to include only contract claims—mirror the relief sought in the Declaratory Action. None of the cases cited by APSLP for this purported rule of construction involved parallel proceedings where the action for which remand was sought had the same common nucleus of facts as an existing federal action. (*See* D.I.10 at 5.)

8

action to enforce its rights, that suit would necessarily present a federal question." *Franchise Tax Bd.*, 463 U.S. at 19.

Federal appellate courts, including the Third Circuit, applying the coercive action doctrine have held that the relevant inquiry is whether the declaratory defendant—the true plaintiff—*could* file its own federal claim.  The Third Circuit, for instance, recently concluded that a district court had federal question jurisdiction over a declaratory judgment suit "because [the] complaint demonstrates that the [declaratory defendant] *could* seek coercive relief" under either of two federal statutes.  *Honeywell*, 502 F. App'x at 204 n.4 (emphasis added).

The Third Circuit's *Honeywell* decision quotes the Eleventh Circuit's articulation of the coercive action doctrine:  "Federal question jurisdiction 'exists in a declaratory judgment action if the plaintiff has alleged facts in a well-pleaded complaint which demonstrate that the defendant *could* file a coercive action arising under federal law.'"  *Stuart Weitzman*, 542 F.3d at 862 (quoting *Household Bank v. JFS Group*, 320 F.3d 1249, 1251 (11th Cir. 2003)) (emphasis in *Stuart Weitzman*).  In *Household*, the Eleventh Circuit noted that it was joining "seven of [its] sister circuits" in adopting this test.  *See* 320 F.3d at 1251; *see also Columbia Gas Transmission Corp. v. Drain*, 237 F.3d 366, 370 (4th Cir. 2001) ("Because the complaint at issue does not assert an affirmative cause of action arising under federal law, we must ask whether it seeks declaratory relief on a matter for which [the declaratory defendant] could bring a coercive action arising under federal law against [the declaratory plaintiff].");  *Standard Ins. Co. v. Saklad*, 127 F.3d 1179, 1181 (9th Cir. 1997) ("[I]f the declaratory judgment defendant could have brought a coercive action in federal court to enforce its rights, then we have jurisdiction.") (internal quotations and alterations omitted).  Similarly, in *Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 562-63 (2d Cir. 1991), the Second Circuit held that the district court had

9

properly exercised jurisdiction over an action for a declaration of non-liability under Sections 10(b) and 14(e) of the Exchange Act where the declaratory judgment defendant had sent a letter threatening that it "might assert" such claims.[3]

Universal's removal of the Declaratory Action amply satisfies this test. As discussed above, Universal not only could assert a claim under Section 10(b) of the Exchange Act against APSLP arising out of the matters alleged in the Declaratory Action, it actually filed such a claim in the Securities Fraud Action. Moreover, as APSLP acknowledges in its complaint by referencing Universal's March 1, 2013 and August 22, 2013 letters that described Universal's potential claims—and as it openly admits in its brief—APSLP filed the Declaratory Action with full knowledge that Universal intended to assert federal securities fraud claims based on the same operative facts. (*See* D.I. 1 at Ex. 1 ¶¶ 53-54; D.I. 10 at 2 ("[Universal] had also threatened APSLP with alleged federal claims of pre-closing representations under the Securities and Exchange Act of 1934 . . . .").) APSLP's complaint further acknowledges that Universal paid for APS with NYSE-traded stock. (*See* D.I. 1 at Ex. 1 ¶ 24.) Thus, because Universal could (and did) bring a federal claim arising out of the same facts, this Court has jurisdiction and removal was proper.[4]

---

[3]     APSLP pretends that *Kidder* supports its cramped view of the coercive action doctrine by noting that the Second Circuit held that the district court should not have retained pendent jurisdiction of certain state law claims *after* it resolved the federal securities claims. (D.I. 10 at 12-13.) That aspect of the case has no pertinence here because in *Kidder*, unlike here, the judicial determination of the federal securities claims did not simultaneously resolve the state law claims.

[4]     APSLP tries to suggest that Universal's federal securities claim is "tangential" and that the GTCR Defendants' fraud may not constitute *securities* fraud. (D.I. 10 at 12.) The suggestion, which has no support in the cited cases, is baseless. An issuer that relies on false representations to buy a company with its own stock states a claim for federal securities fraud. *See Pages, Inc. v. Gruner & Jahr Printing & Publ'g Co.*, No. 95-9703, 1996 WL 48586, at *1-2

10

II.    **APSLP's Complaint Encompasses Universal's Federal Securities Fraud Claim**

Hoping to set up dueling federal and state court lawsuits on overlapping issues, APSLP argues that (1) it is "master of its complaint" and has "strictly limited" its complaint to "state law breach of contract issues"; and (2) the coercive action doctrine does not apply because Universal's fraud claims are not "necessarily" or "inevitably" federal in nature. (*See* D.I. 10 at 2, 9, 11.)  Neither argument withstands scrutiny.

A.    **On Its Face, APSLP's Complaint Seeks Declaratory Relief With Respect To Universal's Federal Rights**

APSLP's contention that its complaint is confined solely to state law breach of contract issues is belied by the plain language of the complaint.  APSLP alleges that it is not liable to Universal "under any legal theory" with respect to the subject matter of each of its 18 counts for declaratory relief.  APSLP now argues that Universal takes this language "out of context" and that the words "under any legal theory" really mean only "claims that APSLP breached the Merger Agreement."  (D.I. 10 at 5.)  APSLP could have easily alleged that it is not liable to Universal "under the Merger Agreement" if that was all it intended, but it did not.  Instead, it couched its requests for a declaration of non-liability in the broadest manner possible, without qualification.

Moreover, instead of tying its requests for declarations of non-liability to the *specific contractual representations* at issue in each count, APSLP alleged more broadly that it has no

---

(S.D.N.Y. Feb. 7, 1996); *see also Popovice v. Milides*, 11 F. Supp. 2d 638, 641-42 (E.D. Pa. 1998) (part of "the fundamental purpose of § 10b and Rule 10b-5 is . . . to make sure . . . that sellers of securities are not tricked in parting with something for a price known to the buyer to be inadequate or for a consideration known to the buyer not to be what it purports to be").  More broadly, a merger transaction that involves the transfer of shares is subject to § 10(b) of the Exchange Act.  *See, e.g., Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 42 (D. Del. 2002); *McCabe v. Ernst & Young, LLP*, Civ. No. 01-5747, 2006 WL 42371 (D.N.J. Jan. 6, 2006).

11

liability "under any legal theory" with respect to the *underlying facts of each count*.  For

example, ██████████ addresses APSLP's misrepresentations in connection with APS's contract with

██████████, APS's single largest contract.  Prior to the closing, a board member of ██████████

██████████████████ notified senior APS management that APS was in breach of the

parties' contract in multiple respects, that APS would be fined, and that the contract might be

canceled.  (*See* Sec. Fraud Compl. ¶¶ 41-43; D.I. 1 at Ex. 1 ¶¶ ██████████.)  Yet, even

though APS, GTCR, and Universal met *later that day*, this critical information was concealed

from Universal.  (Sec. Fraud Compl. ¶ 48(b).)  Thereafter, APSLP made a number of false

representations in the Merger Agreement, including, among others, that APS was not in breach

of the ██████████ contract (Section 3.29) and that none of APS's counterparties had indicated an

intent to cancel, terminate or modify a material contract (Section 3.17).  Just two weeks after the

merger closed, APS received a letter from ██████████ revealing the alleged contract deficiencies

that the GTCR Defendants had hidden from Universal.  (Sec. Fraud Compl. ¶ 69(a).)  APSLP

does not simply ask for a declaration that it has no liability for breaching the specific contractual

representations in the Merger Agreement.  Instead, APSLP seeks the far broader declaration that

it "does not have any liability to [Universal] under any legal theory with respect to ██████████

██████████████████████████████" (D.I. 1 at Ex. 1 ¶ ██████ (emphasis

added))—a request for relief encompassing *all* potential claims that Universal could bring arising

out of the ██████████ episode, whether contractual or not.

APSLP is not the first declaratory judgment plaintiff to attempt to stave off removal by

recasting its complaint.  In *Carson Real Estate Cos., LLC v. Constar Grp., Inc.*, No. 10-13966,

2011 WL 4360017, at *1 (E.D. Mich. Sept. 19, 2011), a dispute arose over alleged unauthorized

use of a computer database.  Carson filed a state court declaratory judgment action seeking,

among other things, a declaration that it did not "take any action that would interfere with *any rights or property interests* of [CoStar]." *Id.* at *4. CoStar removed the case to federal court on the grounds that Carson's complaint encompassed CoStar's federal copyright claims. *Id.* at *2. Carson moved to remand the action, claiming it had not expressly asserted a federal law claim. *Id.* at *3. The court rejected Carson's argument as "disingenuous." *Id.* at *4.

In reasoning equally applicable here, the court explained that "[a]lthough [Carson] had not expressly requested a declaration that it had not violated any of [CoStar's] copyrights, the unqualified breadth of its request certainly encompassed [CoStar's] copyrights." *Id.* at *3. The court further reasoned that "the context of the dispute between the parties unequivocally demonstrates that Plaintiff's complaint encompasses [CoStar's] copyrights" because CoStar had previously sent Carson a letter threatening "causes of action under Federal and state law, including without limitation copyright infringement" and had, in fact, filed a separate action alleging copyright infringement. *Id.* at *4. The court was similarly unmoved by Carson's argument that the crux of the action involved state law claims under a license agreement, explaining that "any request for a declaration that there was no violation of [CoStar's] federally protected rights—even if not a primary claim—is sufficient to support federal question jurisdiction." *Id.* at *5. Accordingly, the court concluded that Carson's broad request for declaratory relief "[fell] within the heartland of declaratory claims for which there is unquestionably 'arising under federal law' jurisdiction." *Id.* (citing *Franchise Tax Bd.*, 463 U.S. at 19).

Similarly, in *Brocato v. Angelo Brocato Ice Cream & Confectionery, Inc.*, No. 03-1316, 2003 WL 22038402 (E.D. La. Aug. 25, 2003), the court rejected the declaratory judgment plaintiffs' argument that their action related solely to state law and therefore denied their motion

to remand.  Citing *Franchise Tax Board*, the court explained that the "law is now well-settled

that when a state law declaratory judgment action is removed to federal court, it is the nature of

the threatened coercive action that determines whether federal jurisdiction exists." *Id* at *1.

Thus, notwithstanding that the plaintiffs were "careful to avoid any express reference to federal

law in their petition," the court held that the action arose under federal law because they brought

it as a "preemptive measure" in response to a letter threatening federal trademark claims.  *Id.*[5]

Just as in *Carson* and *Brocato*, APSLP brought its Declaratory Action with full

knowledge that Universal was planning to bring a federal law claim.  Here, as in *Carson* and

*Brocato*, the language and surrounding context of APSLP's complaint—including its subterfuge

to secure nominal "first-filed" status—make it clear that the Declaratory Action complaint was

intended to encompass Universal's federal securities fraud claim.  Similar to the language in

*Carson*, APSLP's unqualified assertions that it is not liable to Universal "under any legal theory"

mean exactly what the plain words say.  APSLP should be held to its claim that it is the "master

of its complaint," and not permitted to avoid federal jurisdiction by rewriting it.  (D.I. 10 at 9.)

## B.     APSLP's Reliance And Exclusive Remedies Defenses Are Obvious Attempts To Preempt Universal's Federal Rights

While the complaint's "under any legal theory" mantra is reason alone to reject APSLP's

argument, APSLP betrays its true purpose of precluding Universal's federal securities claims in

other ways as well.  APSLP concedes that it "filed this lawsuit to enforce the Merger

---

[5]      Universal cited *Carson* and *Brocato* in its Notice of Removal, but APSLP makes no attempt to grapple with these authorities in its motion to remand.  Instead, APSLP purports to distinguish *Carson* on the ground that it concerns the Copyright Act and *Brocato* on the ground that it concerns federal trademark law, while the present case concerns a different federal statute, the Exchange Act.  (D.I. 10 at 12 n.2.)  APSLP does not explain why this difference has any bearing on whether there is federal question jurisdiction here.

Agreement's express disclaimer of any representations and warranties outside the agreement and corresponding 'anti-reliance' provision." (D.I. 10 at 2.) But such arguments are irrelevant to whether APSLP has breached any contractual representations or warranties, since reliance is not an element of a breach of contract claim under Delaware law. *See, e.g., Gutridge v. Iffland*, No. 291, 2005, 2005 WL 3454129, at *4 (Del. Dec. 15, 2005) (because "reliance is not an element" of breach of contract, lower court "erred in dismissing the Buyer's breach of contract claim"); *Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 548 (Del. Super. Ct.) ("The Court will not . . . require the plaintiffs to prove that they were justified in relying upon [the defendant's] representations and warranties as set forth in the Agreement."), *aff'd*, 886 A.2d 1278 (Del. 2005).

By contrast, reliance *is* an element of Universal's fraud claims, including its federal securities fraud claim. *See, e.g., Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 159 (2008). The enforceability of the anti-reliance and exclusive remedies provisions in the Merger Agreement against Universal's securities fraud claims is, however, unequivocally a matter of federal law. Section 29(a) of the Exchange Act provides that "[a]ny condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder . . . shall be void." 15 U.S.C. § 78cc(a). The Third Circuit has held that "enforcement of the non-reliance clauses to bar [plaintiff's] fraud claims as a matter of law would be inconsistent with Section 29(a)." *AES Corp. v. Dow Chem. Co.*, 325 F.3d 174, 180 (3d Cir. 2003). Thus, APSLP's claim that its "complaint is strictly limited to state law breach of contract issues" is, at best, implausible.[6]

---

[6]     Even under Delaware state law, contractual limitations on remedies do not apply where the seller of a company knowingly made false statements in the contract or engaged in "conscious participation in the communication of lies to the Buyer." *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1064 (Del. Ch. 2006).

15

### C.   APSLP's Complaint Necessarily Goes To The Heart Of Universal's Federal Securities Claim

APSLP's argument that the coercive action doctrine does not apply because the subject matter of the claims at issue is not "necessarily" or "inevitably" federal in nature is also flawed. As discussed above, as long as the true or coercive plaintiff *could* assert a federal claim, the federal court has jurisdiction over the corresponding declaratory action. Accordingly, courts have rejected the notion that the "anticipated coercive action would *have* to be federal in nature." *Household Bank*, 320 F.3d at 1254 (holding that district court had jurisdiction over declaratory judgment action where coercive plaintiffs could assert both federal and state law claims) (emphasis in original).

More importantly, APSLP's argument ignores the overlapping nature of the federal and state law claims at issue. As APSLP notes, "[t]he extent to which a state law claim necessarily raises a federal issue is inherently a question of degree, requiring a pragmatic judgment based on the particulars of the individual case." (D.I. 10 at 11 (quoting *NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, 24 (Del. Ch. 2009).) Similarly, the court in *City of Pittsburgh v. UPMC*, another case cited by APSLP, explained that the coercive action doctrine applies when there is "some degree of congruence between the declaratory judgment action[] and the hypothetical (or real) coercive action[]." No. 13-565, 2013 WL 4010990, at *4 (W.D. Pa. Aug. 6, 2013).

This case involves precisely such a nexus. Even assuming that APSLP was trying to limit its complaint to declarations regarding state law breach of contract claims (which it did not), there is no way meaningfully to separate the resolution of such claims from the resolution of Universal's federal securities claim. A judicial determination that a particular contractual representation was true would simultaneously preclude *both* a state law breach of contract claim

16

*and* a fraud claim under Section 10(b) of the Exchange Act because both claims rely on the same representation. Nor should Universal have to prove the same claims twice in two different courts based on the same facts.

Accordingly, this case is unlike *Care Corp. v. Kiddie Care Corp.*, 344 F. Supp. 12, 16-17 (D. Del. 1972), on which APSLP relies so heavily. In *Care Corp.*, the true plaintiff asserted distinct claims for relief: a state claim that the issuance of stock had violated the Delaware General Corporation Law, and a federal claim that the true defendants had violated Section 10(b) of the Exchange Act. *Id.* at 14. The declaratory plaintiff sought a declaration only that the issuance of stock "was in full compliance with Delaware law." *Id.* In ruling that the particular state claim in that case should be heard in state court, the federal court emphasized that "allowing the declaratory plaintiff to state his own case" did not mean "in the context of this case that [the true plaintiff] will be deprived of a federal determination of its federal claim." *Id.* at 17. Indeed, although the court acknowledged that "some facts" alleged in the two cases might overlap, the court specifically noted that "[t]he legal standards [were] different and the *relevant* facts [would] differ." *Id.* at 17 n.4 (emphasis added).

This case is just the opposite. Here, a determination of APSLP's claims in its favor would strike at the very heart of Universal's federal securities claim. Unlike the declaratory defendant in *Care Corp.*, Universal would indeed be "deprived of a federal determination of its federal claim." *Care Corp.*, 344 F. Supp. at 17. Accordingly, far from supporting APSLP's position, *Care Corp.*'s logic favors federal jurisdiction because if APSLP prevails on its state law

claims, it would effectively deprive Universal of its exclusive federal forum for its federal securities fraud claims.[7]

## CONCLUSION

Because this Court has federal question jurisdiction over APSLP's Declaratory Action, Universal respectfully requests that this Court deny APSLP's motion to remand this action to state court and, for the reasons stated in Universal's Brief in Support of Its Motion to Dismiss (D.I. 12), dismiss the Declaratory Action in its entirety.[8]

---

[7]     The other cases on which APSLP relies are all off the mark. *Cooper Industries, LLC v. ABB Holdings, Inc.*, No. H-09-3534, 2010 WL 173547 (S.D. Tex. Jan. 14, 2010), did not implicate the coercive action doctrine because the party seeking declaratory relief was, in fact, the true plaintiff. *Id.* at *1. In that setting, the plaintiff was free to choose between state and federal remedies. Nor was the coercive action doctrine at issue in *Borek v. Weinreb Management*, 933 F. Supp. 357 (S.D.N.Y. 1996), another case where the declaratory plaintiff was the true plaintiff. Moreover, the issue in *Borek* was whether a state cause of action was completely preempted—a claim Universal does not make here. *See id.* at 360-62. *Hunter Douglas Inc. v. Sheet Metal Workers International Ass'n, Local 159*, 714 F.2d 342, 345 (4th Cir. 1983), is another preemption case, and therefore inapposite. *NAACO Industries* did not address the coercive action doctrine; instead, it addressed the issue of whether a state law fraud claim could be based on false statements made in a federal securities law filing. *See* 997 A.2d at 20-25.

[8]     In its motion, APSLP also seeks attorneys' fees and costs under 28 U.S.C. § 1447(c). APSLP does not even try to support this meritless request in its brief. The entrenched coercive action doctrine is an "objectively reasonable basis for seeking removal," which precludes an award of fees and costs. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005); *see also First Am. Title Ins. Corp. v. JP Morgan Chase & Co.*, 384 F. App'x 64, 66 (3d Cir. 2010) (reversing award of attorneys' fees for abuse of discretion, citing *Martin*).

18

                                                      _/s/ Blake Rohrbacher_
Of Counsel:                                    Blake Rohrbacher (# 4750)
                                               Kelly E. Farnan (#4395)
Andrew J. Levander                             Katharine C. Lester (#5629)
Linda C. Goldstein                             Richards, Layton & Finger, P.A.
Paul C. Kingsbery                              920 North King Street
Dechert LLP                                    Wilmington, Delaware 19801
1095 Avenue of the Americas                    302-651-7700
New York, New York 10036                       rohrbacher@rlf.com
212-698-3500                                   farnan@rlf.com
andrew.levander@dechert.com                    lester@rlf.com
linda.goldstein@dechert.com
paul.kingsbery@dechert.com

Stuart T. Steinberg
Elisa T. Wiygul
Dechert LLP
2929 Arch Street
Philadelphia, Pennsylvania 19104
215-994-4000
stuart.steinberg@dechert.com
elisa.wiygul@dechert.com                       _Attorneys for Defendant Universal American_
                                               _Corp._

Dated: December 16, 2013


                                      19

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2013, I caused true and correct copies of the

foregoing document to be filed with the Clerk of Court using CM/ECF, which will send

notification of such filing to the following, and that a copy of the foregoing document has also

been served by electronic mail to the following:

Jon E. Abramczyk
Ryan D. Stottmann
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street, Suite 1600
Wilmington, DE 19801
(302) 658-9200
jabramczyk@mnat.com
rstottmann@mnat.com

Reed S. Oslan
Scott A. McMillin
Richard U.S. Howell
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
reed.oslan@kirkland.com
scott.mcmillin@kirkland.com
rhowell@kirkland.com


/s/ Blake Rohrbacher
Blake Rohrbacher (#4750)
rohrbacher@rlf.com